UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————————x

UNITED STATES OF AMERICA,

-against-

07 Cr. 916 (CM)

MIGUEL DeCASTRO and
WILLIAM GONZALEZ,

Defendants.

—————————————————————x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/11/08

## DECISION AND ORDER GRANTING A HEARING ON DEFENDANT GONZALEZ'S MOTION TO SUPPRESS

McMahon, J.:

The indictment before the Court charges William Gonzalez and Miguel DeCastro with conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846, 812, 841(a)(1) and 841(b)(1)(A).

Defendant Gonzalez has filed a motion asking the Court to suppress the statements he made to law enforcement on the ground that they were involuntary and obtained in violation of his Miranda rights. Deft's. Notice of Motion at 1. Gonzalez has submitted a sworn affirmation with his moving papers averring *inter alia* that he has "no recollection of being advised of his Miranda rights." Gonzalez Aff at ¶ 3.

Defendant also asks the Court to direct the Government to provide the defense with all exculpatory material, pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and to "timely" disclose any prior bad acts or criminal convictions the Government intends to use at trial. Deft's. Notice of Motion at 1.

Background

According to the Government's complaint (07 Mag. 1445): In or about August 2007, a cooperating witness ("CW-1") received information that a co-conspirator not named herein had lined up customers who wanted to purchase approximately twenty kilograms of cocaine from CW-1. On or about August 28, 2007, CW-1, acting at the direction of law enforcement, arranged to meet with two individuals, later identified as Miguel DeCastro and William Gonzalez. At the meeting, CW-1 informed DeCastro and Gonzalez that he would charge a delivery fee of $2,500 per kilogram of cocaine. Gonzalez stated that they had to make some phone calls to gather the money.

On or about August 29, 2007, CW-1 again met with DeCastro and Gonzalez at the K-Mart Store. They discussed the transaction and then proceeded to the K-Mart Store parking lot to transfer the money. DeCastro told CW-1 to pull his car alongside their car so that Gonzalez could test the cocaine before they paid the $25,000. Shortly after CW-1 parked his car alongside DeCastro's car, DeCastro and Gonzalez were arrested.

After the arrest, the agents saw a hidden compartment, or "trap," in the area of the back seat of DeCastro's car. The trap door had been opened already, so that four bundles of currency were in plain view. The trap also contained a black bag, holding crack and powder cocaine.

After his arrest, Gonzalez was read Miranda warnings and he agreed to speak to the agents. In part and substance, Gonzalez stated the following (collectively, the "Post Arrest Statements"):

> a.    He went with DeCastro to meet with CW-1 on August 28, 2007 at the K-Mart Store.
>
> b.    After the meeting, they went to Danbury, Connecticut.
>
> c.    On the morning of August 29, 2007, Gonzalez and DeCastro drove to Manhattan. They picked up a car with a trap in it and went to the K-Mart

Store to pick up drugs from CW-1.

d.     Gonzalez said that his job was to test the cocaine. Specifically, he would cut open the package containing the cocaine with a razor blade and sniff some of the cocaine. If the cocaine was good, Gonzalez would help DeCastro load the drugs into the car trap and give the money to CW.

Gov't. Letter Brief at 1-2.

### Gonzalez's Motion to Suppress Post-Arrest Statements

In his motion, Gonzalez contends that the Post-Arrest Statements should be suppressed because he does not recall being given <u>Miranda</u> warnings and because his English is too poor to understand any advice of rights that he was given. (Gonzalez Affirmation, ¶¶ 3-5). Defendant's affirmation presents material factual inconsistencies with the allegations in the sworn Complaint. Indeed, the Government consents to a hearing in this matter in order to resolve the factual disputes.

Accordingly, the Court orders a hearing held on April 1, 2008 at 10:00a.m.

### Discovery Motions

Gonzalez asks the Court to compel the Government to produce any exculpatory material and any prior bad act evidence the Government intends to introduce at trial.

Based on the Government's representation that it is aware of its obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and its progeny, and that the Government will continue to provide such information to the defendant in a timely fashion (Gov't. Letter Brief at 3), this Court will not issue an order compelling the production of such materials at this time. <u>See, e.g.</u>, <u>United States v. Gallo</u>, 1999 WL 9848, at *7 (S.D.N.Y. January 6, 1999); <u>United States v. Perez</u>, 940 F. Supp. 540, 543 (S.D.N.Y. 1996).

3

With respect to the production of prior bad act evidence, so called 404(b) evidence, the Government is directed to notify defendant at least two weeks prior to the trial (earlier is always better) of the general nature of any evidence of this type it intends to introduce at trial. *See e.g. United States v. Gutierrez-Flores*, No. 94 Cr. 393, 1994 WL 558034, at *4 (S.D.N.Y. October 11, 1994) (directing government "to comply with mandate of Rule 404(b) by providing . . . notice within 10 days before trial"). The Court will set a trial date at the conclusion of the suppression hearing, now scheduled for April 1, 2008, at 10:00a.m.

This constitutes the decision and order of the Court.

February 11, 2008

_____
U.S.D.J.

BY FAX TO:

William J. Harrington
Assistant United States Attorney

Kelley J. Sharkey, Esq.
26 Court Street
Suite 2805
Brooklyn, NY 11242
Fax: (718)-875-0053

4